IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MARK MILTON MOORE, #00343068 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv140 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Petitioner Mark Milton Moore, a prisoner confined at the Coffield Unit within the Texas Department of Criminal Justice (TDCJ), proceeding *pro se*, filed this habeas petition complaining of the denial of release onto mandatory supervision. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for disposition of the case. For reasons explained below, the Court recommends that Moore's petition be denied, and the case be dismissed with prejudice.

**I. Procedural History**

Moore is serving a life sentence for one count of capital murder committed in 1973. After filing a federal habeas petition, the United States District Court for the Northern District invalidated his previous death sentence, resulting in a life sentence. The United States Court of Appeals for the Fifth Circuit subsequently affirmed the invalidation of Moore's death sentence. *See Moore v. Estelle*, 670 F.3d 56, 57 (1982).

**II. Moore's Federal Petition**

Moore seeks federal habeas relief because he has been consistently "denied release on mandatory supervision," for thirty-seven years. He maintains that the law at the time he committed his offense treated a life sentence "as the equivalent of a sixty (60) year sentence. Moore explains

1

that he has served forty-three years calendar time. In totality, he states that he has accumulated "77 years, 6 months, and 8 days [of] time credits, placing Petitioner well over the requirement under the law in effect at the time" of the offense, (Dkt. #1, pg. 5). Consequently, TDCJ's refusal to release him from prison is an ex post facto violation. *Id*.

Furthermore, Moore maintains that the Board of Pardons and Parole violated his due process rights because it will not order him released—as he has a "reasonable expectation of release onto mandatory supervision." *Id*. at pg. 6. Moore further argues that TDCJ violated his due process rights because it refused to return his "forfeited good-time credits under the good-time conduct law." *Id*.

### III. Legal Standards

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation omitted). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

### IV. Discussion and Analysis

Moore's habeas petition should be denied. As an initial matter, the undersigned ordered Moore to amend his petition—as he failed to file his petition on the standardized habeas form— and warned him that the failure to comply with the order may result in the dismissal of his case, (Dkt. #3, pg. 2). To date, however, Moore has neither filed an amended petition nor communicated

with the Court, and the Court may dismiss his case for those reasons alone. Fed. R. Civ. P. 41(b); *see also McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) ("The court possesses the inherent authority to dismiss the action *sua sponte*, without motion by a defendant.").

This proceeding, nonetheless, suffers from a fundamental flaw: Moore has no constitutional right to release onto mandatory supervision and no constitutional right to parole. He has no protected liberty interest in the accrual of good-time credits.

*A. Mandatory Supervision*

The primary consideration in this case is whether Moore has stated or presented the denial of a constitutionally protected liberty interest. He has not. "Federal habeas relief cannot be had 'absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (quoting *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)). The procedural protections of the due process clause are triggered only when there has been a deprivation of life, liberty, or property; because neither Petitioner's life nor property interests are at stake—particularly because his chief complaint is that his TDCJ will not release him even with all his credits—the pertinent question here is "whether he had a liberty interest that the prison action implicated or infringed." *Toney v. Owens*, 779 F.3d 330, 336 (5th Cir. 2015); *Richardson v. Joslin*, 501 F.3d 415, 418-19 (5th Cir. 2007).

Work-time credits and good-time credits relate to potential release on parole or mandatory supervision. Under certain circumstances, the loss of good time could inflict punishment imposing an atypical and significant hardship upon an inmate—because the loss of such time could result in the denial of a liberty interest in early release from prison. This condition exists where an inmate is eligible for release on mandatory supervision. *See Madison v. Parker*, 104 F.3d 765, 768 (5th

3

Cir. 1997). In other words, there is no protected liberty interest in previously earned good-time credits when an inmate is **not** eligible for mandatory supervision. *See Stewart v. Crain*, 308 F. App'x 748, 750, 2009 WL 166700 *2 (5th Cir. 2009) ("Because Stewart is ineligible for early release under the Texas mandatory supervision scheme, he has no constitutional protected liberty interest in previously earned good-time credits.").

Texas had not established its mandatory supervision statute at the time of Moore's conviction and sentence in 1973. *See Christopher v. State*, 2008 WL 5423236 *6 (Tex. App.—Austin, Dec. 31, 2008) ("The record reflects that Christopher committed the offense of indecency by contact sometime before May 1977, and Christopher stated in his petition that the pre-1977 law should apply. Thus, at the time Christopher committed the offense, there were no mandatory supervision provisions in place."). Accordingly, based on Moore's sentence date, the mandatory supervision statute was not in effect.

To the extent that Moore argues that he should receive the benefit of the 1977 statute providing for mandatory supervision, the Court notes that this argument is likewise without merit. The 1977 statute provided that prisoners not sentenced to death were eligible for release on mandatory supervision when the prisoner's actual calendar time plus good conduct time equals "the maximum term to which the inmate was sentenced." *See* Act of May 30, 1977, 65th Leg., R.S., ch. 347, §15(c), Tex. Gen. Laws 925, 927-28; Article 42.12, sec. 15(c), V.A.C.C.P. (West 1981). The Texas Court of Criminal Appeals subsequently held that "under a literal reading of this law, it is mathematically impossible to determine a mandatory supervision release date on a life sentence because the calendar time served plus any good conduct time will never add up to life." *See Ex Parte Franks*, 71 S.W.3d 327, 328 (Tex.Crim.App. 2001). As a result, prisoners with life sentences are ineligible for mandatory supervision. The court declined to perform the

legislative function of arbitrarily substituting a specific number of years for a life sentence to make it possible to calculate a release date. *Id.* ("This Court would arbitrarily have to substitute some number of years for a life sentence to make it possible to calculate a mandatory supervision release date. This is the Legislature's job.").

The Fifth Circuit Court of Appeals subsequently followed the *Franks* decision in *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002) (per curiam). There, the habeas petitioner was sentenced to life imprisonment in 1978 and argued that he was entitled to mandatory supervision. *Arnold*, 306 F.3d at 278. The Fifth Circuit noted that the statute at issue when Arnold was sentenced—the 1977 version of the statute—explained that a "prisoner who is not on parole, except a person under sentence of death, shall be released to mandatory supervision by order of the Board when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced." *Id.* According to *Franks*, the Court found, Arnold was not eligible for and could not be released on mandatory supervision because it was mathematically impossible to determine a release date on his life sentence. *Id.* at 279 ("The same conclusion clearly applies to the 1977 version of the statute of the law, which is at issue here, because the relevant language is the same as the 1981 version.").

The Fifth Circuit has repeatedly followed *Franks* and upheld its decision in *Arnold*. *See, e.g.*, *Stewart v. Cain*, 308 F. App'x 748, 749 (5th Cir. 2009) (unpublished) ("We determined that the TCCA's reasoning in *Franks* was determinative because the 1977 version of the mandatory supervision statute was substantively identical to the version of the law at issue in *Franks*. . . . Stewart's assertions concerning his eligibility for mandatory supervision therefore is foreclosed by our decision in *Arnold*."); *Pohl v. Livingston*, 241 F. App'x 180, 181 (5th Cir. 2007) (unpublished) ("As the district court determined, Pohl's argument is foreclosed by *Arnold v.*

*Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002), which held that an inmate serving a life sentence is not eligible for release under the 1977 version of the Texas mandatory supervision statute and, thus, does not have a constitutionally protected interest in such release.").

Here, Moore was sentenced to death for capital murder in 1974. His death sentence was commuted to life imprisonment. As in *Franks* and *Arnold*—as well as the subsequent Fifth Circuit cases relying on *Arnold*—Moore is not entitled to release on mandatory supervision because he is serving a life sentence. To the extent that Moore maintains that his life sentence should be treated as a sixty-year sentence for purposes of determining eligibility for release on mandatory supervision, the Texas Court of Criminal Appeals rejected this argument in *Franks*. *See Wade v. Quarterman*, 2009 WL 2591246 *3 (S.D. Tex. Aug. 19, 2009) ("To the extent petitioner claims that a life sentence 'is equivalent to sixty years' and that an inmate 'would be eligible for mandatory supervised release after serving twenty years,' this argument was rejected by both the Texas Court of Criminal Appeals in *Franks* and the Fifth Circuit in *Arnold*.") Because Moore is serving a life sentence, he is ineligible for mandatory supervision—even with his accrued good-time and credits—and, as such, has no protected liberty interest.

  *B. Parole in Texas*

Moore complains that Board of Pardons and Paroles will not release him even though he has an "expectation of release on mandatory supervision to serve the remainder of his sentence on parole," (Dkt. #1, pg. 6). Any loss or failure to apply good-time or work-time credits serves only to affect Moore's possible release date—insofar as Texas law provides that the sole purpose of these credits is to accelerate eligibility for release on parole or mandatory supervision. *See* Tex. Gov. Code § 498.003(a).

Crucially, however, the Fifth Circuit has expressly held that there is no constitutional right to release on parole in the state of Texas. *See Williams v. Dretke*, 306 F. App'x 164, 166 (5th Cir. 2009) ("Texas prisoners have 'no constitutional expectancy of parole' and, thus, any effect that the punishment had on Williams's parole eligibility could not support a constitutional claim."); *Creel v. Keene*, 928 F.2d 707, 708-09 (5th Cir. 1991); *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995). Accordingly, the loss or failure to apply credits that merely serve to accelerate a prisoner's **possible** release does not affect a constitutional right, but only the "mere hope" of release on parole.

But this hope is **not** protected by due process. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Accordingly, because Moore is not eligible for release on mandatory supervision and there is no constitutional right to parole or early release, he does not have a protected liberty interest in his good time or earned work time. *See Bagby v. Karriker*, 539 F. App'x 468, 469 (5th Cir. 2013) ("Because Bagby was ineligible for release on mandatory supervision, the district court did not err in finding that Bagby failed to state a due process claim with respect to the loss of his good-time credits."). Moore does not have a constitutionally protected liberty interest in either release on mandatory supervision or release on parole; therefore, his habeas petition should be denied.

**V. Certificate of Appealability**

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Although Petitioner has not yet filed a notice of appeal, the

court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. 773 (quoting *Miller-El*, 537 U.S. at 336). Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

Here, Moore failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. Accordingly, he is not entitled to a certificate of appealability.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Moore's federal habeas petition be denied, and the case dismissed with prejudice. Finally, it is recommended that Petitioner Moore be denied a certificate of appealability *sua sponte*.

Within fourteen (14) days after the receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations, and, except on the grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 12th day of December, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE